Good morning. This is International v. Dupo. Wrong crowd. Both sides here? They're not here. Glasses. Good morning. Good morning. International Carriers. Good morning, Your Honors. My name is Kevin Coffold. I represent the Labor's Local 100. They're also called the International HOD Carriers Union. It's the HOD Carriers and Labor Union. The issue in this case, this is a grievance arbitration type of appeal. The issue in this case are two issues of law. We involve in residency requirements. The Village of Dupo is the adverse party on this. We had a historically long collective bargaining agreement of 50 years or more duration. At no time was residency ever put into the bargaining agreement, nor was it negotiated. And we had a, my client had a individual bargaining unit member who was living in the village, had a special needs child, moved out of the village to attend a better education, that kind of thing. At that point, the city then issued a pre-termination notice based upon a violation of a 30-year-old residency requirement. It's in their ordinance. We never received notice of it. First time the union knew about that ordinance was at the pre-termination hearing. We show up, the union shows up, just as a courtesy, that's not even part of the grievance process, that's part of the state pre-termination due process. We're never given any written notice by the city at all, at any time, that there is such an ordinance in place. And they said, oh, well, he's moved out, we're going to terminate him. Well, he's already moved out, and then we get informal notice, I guess, at this hearing. At least we know about it, we're never given formal notice on a bargaining agreement. At this point, we were beginning negotiations for a new bargaining cycle, but the city never proposed that old ordinance in place. So we arbitrated it. The arbitrator felt that he wasn't a lawyer. I don't know a good arbitrator, but he felt that there was no man who was subject to bargaining. We brought that up. We then appealed it to Judge Gary. Judge Gary did not cite the Belvedere line of cases that I cited down below, that the village cited down below. Instead, Judge Gary cites the status quo thing. What do you mean by that? Status quo thing. I don't know what it means, because Judge Weston, he never issued any case citations behind that. Paragraph 4 of the court order, it's on transcript, not transcript, but Appendix A-2, says, The grievance change of residency from the village was a precipitating event that changed the status quo, which justified the termination. No case citation at all. Now, this is after I cited and after Mr. Peoples cited the relevant case law, which is the central city Belvedere line of cases, on residency requirements, long established case law from the first and second districts, that clearly says residency is subject to a two-pronged mandatory subject to bargaining type of test. If you satisfy the two prongs, it's mandatory subject to bargaining. You have to bargain to impact, to agreement, and you cannot unilaterally change those conditions of employment. So is it in the record that this residency requirement was never bargained with the union and that the – was there a notice ever sent out? No. Your Honor, we asked any arbitration numerous times. We never received notice. My business agent, Wes Green, was a longstanding business agent for at least 15 years. He never received any notice. At no time did we ever testify that we knew about this agreement, this ordinance, and at no time did the village ever proffer that they knew about it, that they gave us notice. How long had this ordinance been in effect? Thirty years, apparently, but we were never told at any time. There was no evidence in the case whatsoever that we were given notice at any time in those 30 years, either in writing or orally. None. We testified that we never received any oral notice, and we went through all the files, did not receive any written notice at all or not. At no time did the village ever submit a written documentation saying that they gave us notice. At no time did they even try to say that there was oral notice given. The best it got was this pre-termination hearing. And I was in formal notice because we showed up, and by then it was too late. My grievance had already moved out. I have a number of cases in the brief which says that that doesn't count because it's after the fact. That's prejudicial to the grievance. Several cases along those lines, they're all arbitration cases, all Procrastinian cases. The first time any testimony in the case came in about notice was the pre-termination hearing. That's just grossly unfair to implement. You know, if they can do this, they can just pass out any ordinance, wait, and look, and then say, oh, by the way, here's an old ordinance on health insurance. Here's an old ordinance on wages, on vacation, on anything. That's what effectively happened here. That's why we're so irate about this, Your Honor, is that we had an old ordinance in place. We never knew about it. They never notified us. Our guy moved out, and then they terminated him. Now, this is a mandatory subject of bargaining under the Belvedere line of cases, Central City, very clear. Prong one, is it a condition of employment? Well, of course it is. And prong number two, is it a matter of inherent managerial authority? The Thomas Cicero case, which is another one of those line of cases from Illinois, says that it's not an inherent management right. It's not a management authority. Now, once those two prongs are satisfied, then it's a mandatory subject of bargaining. The U.S. Supreme Court case, Katz, that I believe I cited, NLRB v. Katz, clearly says once it's a mandatory subject of bargaining, unilateral changes cannot be made prior to agreement. They have to bargain to agreement. Plus, the Illinois state statute, and I cited it in the brief, it's 5 ILCS 315-7. Public Labor Relations Act specifically says that there's a duty on public employers to bargain over any ordinance that's enacted independently of the bargaining agreement. It's right in the state law. Independently of the bargaining agreement, if it was enacted as an ordinance, they have to bargain over that. That's exactly the scenario here that did not happen. They enacted a 30-year-old ordinance, never gave us notice. They independently enacted it outside of the bargaining agreement, and then they unilaterally implemented it. That's exactly a violation of the state statute that I cited to you. It's not only this jurisdiction. Illinois has consistently ruled residency as a mandatory subject of bargaining to agreement, not to impasse. Critical distinction. To impasse, you can implement once you go on strike. You can implement. Bargaining to agreement means you cannot put it into the contract. It's so sacred that you cannot put it into the contract without agreement of both parties. Very clear. Not only in Illinois has residency requirements been held to be mandatory subjects of bargaining to agreement, but other jurisdictions as well. I cited a number of cases from other jurisdictions. Three cases from Pennsylvania. Two cases from Connecticut. Two cases from Michigan. One case from Massachusetts. These are all northeastern cases because they're the ones that involve residency requirements for the most part. All these states have consistently ruled residency requirements mandatory subject of bargaining to agreement. The cases that respondents cite in their reply brief, mostly commercial transaction cases which don't even apply. They involve arbitrations of professional liability contracts and contract disputes, and they always cite that it's a limited standard of review. The interesting thing about all those cases is that in this case I proposed a de novo standard of review because it's a gross error of law times two on notice and on status quo. I proposed a de novo in my brief. De novo standard of review because it's an error of law. There was no opposition by a respondent in their reply brief. So how can you have a limited standard of review citing to all those commercial cases in the reply brief, but then also have a de novo standard of review for errors of law? That doesn't make much sense to me, Your Honor. If we're at a de novo level of review, which I think we are because these are two errors of law, then none of those cases have any applicability whatsoever. And even in those cases, they usually relate to interpretations of contract disputes. This is not an interpretation of the contract. We're not arguing over a comma or a pulpit. We're arguing over whether they can put an ordinance in place in purported violation of the state law. So for all those reasons, this should be reversed. Now, Judge Wexton, you know, you asked about status quo. There are status quo cases out there, but not in this context. There was a Rule 23 case that was decided by this court in August. Two of the three of you were on that panel, and the Supreme Court just denied that case in November. I didn't even put it in my brief because it's a Rule 23, and it was still on appeal. But that was a St. Clair County case involving interest arbitration, not mandatory. It was – they unilaterally implemented it on something with the metro rail. And the Labor Board, as well as you, as well as this court, or the panel of this court, just ruled in August, and then the Supreme Court denied cert in December, that there is a status quo pending in interest arbitration. You have to honor the status quo. You cannot change terms and conditions pending. Now, I'm reluctant to even cite that to you other than you know about that case, obviously, because it's your – two of you decided that case. I don't think it applies. It's a Rule 23 case, very limited, factual. I doubt if that applies. It's county versus FOP, and it's 5-11-0317. That's an interest arbitration case. This is a grievance case. It just basically froze up terms and conditions pending interest arbitration. That makes perfect sense. Status quo doesn't really translate very well into a grievance arbitration. There's nothing to status quo. That's why I don't think that really applies. Maybe that's what – they came out of the same circle. St. Clair was the court of origin for that case on appeal from the ILRB up to St. Clair. Maybe that – I don't know. I don't know. And St. Clair, the St. Clair court, did reverse the ILRB, and then the appellate court reversed the St. Clair court. On that status quo argument, I don't know. Maybe that's what – there's a lot of status quo cases I can cite to you from memory. You know, it talks about a reasonable expectation, not mandatory subject to bargaining, but in general, status quo talks about a reasonable expectation to preserve a custom and practice on the bargaining contract, whether it's this Rule 23 case that's not applicable, I don't think, or the general law about status quo, the general labor law status quo. It goes to a reasonable expectation of preservation of an existing custom. Well, there was no custom here. There was no custom of residency being a requirement. We knew of no such custom. So whether you use a status quo argument or develop it in your line of argument, the union should prevail in this case. We honestly did not know about this. There is no custom and practice on the bargaining agreement about residency. It's not in there. Now, interestingly, after the arbitration, we were in contract negotiations. It's in the transcript on appeal at the judicial level. So I think it is relevant. We did argue this in front of Judge Aguirre. The union did request negotiations for residency to clear this issue up, and it's in the transcript. And the city did not propose, and there was no major negotiations on residency. And that was before? This was after the arbitration. We tried to clean up this whole mess post-arbitration. And again, you know, I'm a little reluctant to even cite that because it's after the initial arbitration, but it was involving the fact sequence of this, Your Honor, because we did argue this in front of Aguirre. He was interested. The judge was interested. On what did you ever negotiate? Nobody ever negotiated this, neither party negotiated before the arbitration. Afterwards, we attempted to clean it up, and it's on the record at C213 and 214. The union made a proposal. We at least orally said, well, let's work on the residency requirement, and Trustee Bright then said, well, we have no proposal for you. So, you know, of course, the trustees are not going to be overly enthused about negotiating after they won an arbitration, but the point is that we tried to clean this up. We did negotiate this thing after the fact, and we still got nowhere on the thing. This thing was unilaterally implemented on us. We had no notice. The best it got was a pre-termination hearing. At arbitration, if I got, do I have a couple of minutes? At arbitration, you know, I asked in the appellate brief. In my appellate brief, where is the notice? I asked in the circuit level brief, where is the notice? I asked in the arbitration brief, where is the notice? They argued at one of the levels. I don't know which. I don't think it was this level, but down below at one of the levels, the city argued, well, he knew about it because we asked a question when he applied as a police officer. They didn't apply to village officers. Yeah, that's exactly right. Now, police officers make less than laborers, amazingly, in the village of Dupont. So he initially, six years before, applied for a police officer, was accepted as a police officer, and then transferred to the laborers' unit. Different bargaining terms. One contract has residency. At one time, police has something about residency, and the laborers don't. He was never told specifically, as an applicant for a police officer, that you understand you have to move into the village of Dupont as all employees. Never was told that. He was only asked the question, would you be willing to move into the village of Dupont if you became a police officer? He said, sure. And he did. He was living in Cowesville at the time. He subsequently became a police officer. He moved into the village. That was supposedly the notice that we received on a different bargaining contract, where they didn't even say you understand you have to move in. They only asked the question, were you willing to move in? That's the best this got until the pre-termination notice. That's why this is just a total travesty on both points. We deserve notice. Judge Aguirre just absolutely flat wronged on that. I cited several cases to you in this brief that we're entitled to notice. How do we negotiate something that we don't even know about? His paragraph number five of the order specifically says we're not entitled to notice. That's just flat out wrong as a matter of law. That's all there is to it. We are entitled to notice. And the status quo thing doesn't make any sense. It's completely that several cases say you analyze it in terms of two prongs that I gave you before. He didn't cite any cases on status quo, but I've given you the gist of the status quo cases that turn around, either in this Rule 23 case or all the cases are basically the same, where you look to a reasonable expectation of a custom and practice being maintained in the contract, and yet still you maintain status quo, ending your interest arbitration or pending negotiations. Here, we didn't know about practice. If there was a practice, only the village knew about the practice, not us. How can you say there was a practice that we knew about? How can you say that there was a custom that there should be some status quo preserved? But that's apparently what Justice or Judge Aguirre did. I know him very well in practice. Find him. We're entitled to the Belvedere Central City line of cases as the applicable standard to review. We're entitled to notice. Those are two gross errors of law. The case law on the state statute, Your Honor, is that the arbitration statute is very limited. You know, there's only five particular points on the arbitration statute, and none of them talks about appealing common law grounds. The case law, though, is very clear on the Uniform Arbitration Act. It says that errors of law are appealable, even though the statute itself doesn't refer to anything about how to appeal. You can appeal if there are technical problems with the record, but there's nothing about a substantive appeal. The case law, and I cited again in my brief, the case law is very specific about that. Gross errors of law are appealable as an arbitrable matter, and I cited two of those errors of law to you that I feel are gross errors and subject to reversal. And that's what I'm asking for is just reversal in this matter, not remand, because there's no point in remanding. If you rule that it's a mandatory subject of bargaining to agreement, that really is the end of the case. Because they didn't bargain to agreement, they didn't even bargain. So I'm just asking for reversal, not a reversal and a remand. If somehow you think there's some questions of fact involved, I can understand a remand. I don't understand any questions of fact being necessary to be resolved down below, but I leave that to your discretion. I feel just a reversal would be appropriate in this instance. Thank you. My name is Mark Peebles, and I represent the Village of DuPont. This is a very simple case. Either the Village of DuPont had a residency requirement or it didn't. At the time that Mr. Garrett was hired, he was asked if he lived in the Village of DuPont or would he be willing to move to the Village of DuPont. At that point, he was given notice of the requirement to live in the Village, and shortly thereafter, he moved into the Village. What's interesting about it, at the time, the police department was under the Local 100 Agreement. It was prior to the FOP involvement, so it was the same contract. The notice was there. He knew that he had to live in the Village. What's interesting is that every other employee who's also subject to the Local 100 bargaining agreement also lives in the Village. Testimony at the arbitration indicated that every employee who was hired was asked the same question. Do you live in the Village, or would you be willing to move into the Village? Did the Village bargain with the union about the residency requirements when it was enacted? It was on the table at all times, Your Honor, and that's what came up at the arbitration. Do you think that the City had the obligation to bargain? I don't think that it's a mandatory subject of bargaining. So you don't think the City of Belvedere in the last cases controls this at all? No. Tell me why not. If you look at the statute, the Illinois Public Labor Relations Act, the legislature found it was necessary to specifically name police officers and firefighters for the issue of residency, and that it states in the statute that that is a mandatory subject of bargaining. It says nothing about laborers. The test is whether or not it's a condition of employment and does not restrict it to police officers. I think that the statute would not have that language in it if Belvedere applied to these employees. I think that under that standard, and what's interesting, I've had to argue on both sides of this because I've also negotiated the contract with the Fraternal Order of Police, and the only reason it came up was because of the change in the law where the statute made that a mandatory subject of bargaining. It has not been, it is not now, and as far as I know, there is no law that says that it is a mandatory subject of bargaining for members of a laborer's union. Perhaps in a municipality with a population in excess of a million, but in a small community like the village of Dupo, there's never been any mandatory subject. Even though the village has remained open to negotiating it, it's not something that was ever raised by the union. Each one of the employees, and Mr. Garrett in particular, who is the issue of this appeal, was told about the residency requirement, and there was no response. There was no request to bargain that residency requirement from the union. There was no indication from Mr. Garrett that he was not willing to comply with that. At the arbitration, there was quite a bit of testimony, because this is a central issue. Both the mayor and Trustee Bright testified that they were present when Mr. Garrett was hired, and that he was asked if he lived in the village or would he be willing to move into the village. When he was hired, for what position? Initially, he was hired as a police officer. As Mr. Kaufold stated, he transferred from the police department to the laborer's union. At the time, it was still the same union. It was Local 100 who handled the negotiations for the police, and also Local 100 who handled the negotiations for the laborers in the village. As Mr. Kaufold stated, there was an increase in pay, so he just moved from one unit to another within the same union. Subsequent to that, the FOP came in and did bargain successfully over the issue of residency after the change in the law. At the time, Mr. Garrett even testified himself at the arbitration that he was aware of that. He did, in fact, move from Maryville into the village of Dupont. I would submit to you that his actions speak louder than words. He did that to become a police officer, correct? He did that to become a police officer. Yes. To which the statute would apply, I mean, the ordinance would apply. Yes. But when he changed from police officer to a union employee, why would his following? I think that's where the status quo came in with the arbitrator and with Judge Aguirre, that this had been the state of affairs in the village of Dupont. It was understood by management. It was understood by the employees that there was a requirement. If you were an employee of the village of Dupont, you lived in the village of Dupont. That was never challenged in any way. The first time that this was ever challenged was when Mr. Garrett moved from the village of Dupont to Freeburg. And at that point, a decision had to be made. Is there a residency requirement or not? It's always been the case that every employee of the village of Dupont lives within the village of Dupont. So he was given notice that he violated the requirement to live within the village of Dupont. So he was given an opportunity to come and speak before the board. And subsequent to that hearing, the board elected to terminate his employment as a result of his violating the residency requirement. As I argued in my brief, it's my understanding that the court, in reviewing this at the circuit court level, has a very limited scope of review, and that when this court reviews the decision of the arbitrator and of the judge at the circuit court level, the review is very limited. Basically, to disturb the decision of the arbitrator, there has to be a gross error of law or fact that's apparent on the face of the award. And I would argue that there is no gross error that's apparent on the face of the award. The Supreme Court in Illinois has made clear that errors of judgment in law are not grounds for vacating an arbitrator's award. When the interpretation of law is entrusted to the arbitrator, that's Beattie v. Doctors Company, 247-0558. In this case... Is it an interpretation of law when the one requirement of the balancing test in Belvedere is that it's a condition of employment? I mean, you are arguing that it is a condition of employment. How can that not be a gross error? I mean, it's a fact. It's not a judgment. If that issue was a mandatory subject of bargain, I would say that it could be interpreted to be a gross error. But I think that that case compared or contrasted with the statute itself, the two of them don't agree. I think that it's only possible to have the Illinois Public Labor Relations Act apply in this case because the legislature made it specific that police officers and firefighters have a mandatory subject of bargaining on residence. And I believe the policy behind that, if you read some of the legislative history behind that, was that police officers and firefighters, especially police officers, if they live in a community, for instance, that's a high-crime area, they may be living in the same community with people that they have to arrest and they have contact on a day-by-day basis for their own safety. The argument was they should be able to bargain their residency so that they can be away from that. I understand that, but that doesn't mean we throw out the common law with respect to everybody else. Then don't we apply the balancing test in Belvedere and its line of cases? I don't think that the balancing test applies in this case. I don't think that the decision that was made by the arbitrator in this matter was a gross error. He was looking at what the status quo was at the time in the village of DuPo. The testimony was very clear that every employee in the village of DuPo lived in the village of DuPo, that every employee in the village of DuPo at the time that they were hired was given notice that either they had to live in the village, if they did not live in the village, they had to move within the village in order to be employed by the village. At no point in time, and as was stated before, this ordinance had been in effect for over 30 years. At no time did Local 100 or any member of Local 100 ever ask to negotiate the issue of residency. Certainly, if that had been brought up, the village could have made a decision at that point to decide whether or not it was a mandatory subject of bargaining, but it was never brought up. I think that because it was not, what else could the village do but to follow its own ordinance and to follow the status quo which had been established over at least a 30-year period. If there had been a question raised about residency, if a member of the union or the bargaining agent or anyone had come to the village and prior to this occurring had requested bargaining on that issue, then I think we have a different case. But in our circumstance, it was a very simple matter. Either there was a residency requirement or there was not. There was an opportunity for a hearing for the bargaining unit and Mr. Garrett to come forward and present evidence why they didn't think there was a residency requirement. It wasn't convincing to the board, it was not convincing to the arbitrator, and it was not convincing to Judge Aguirre. For whatever reason, I think that at the time that the status quo was raised before the arbitrator and he was convinced by the evidence that there had never been any mention of bargaining this issue and that for over 30 years employees of the village lived in the village as a condition of employment, it was not determined to be a mandatory subject of bargaining at any point. Now, I also argued that under the very limited review, it had to be determined if an award was procured by corruption, fraud or other undue means. There was no evidence of that. There was no evidence of any partiality by the arbitrator who was appointed. There was never any allegation that the arbitrator exceeded his powers. There was never any refusal to postpone the hearing. The hearing went forward. All the evidence was presented. And in particular, the arbitration agreement that is at issue here contained a clause where it was binding. Prior to entering into this agreement and prior to entering into this arbitration, both sides agreed to be bound by the arbitrator's decision. And here we are all this time later and the appellant is still arguing the same case that was argued to the arbitrator, that was argued to the circuit court and then he's arguing the same case here before you today. If the award does not contain a gross error on its face, then the arbitrator's award should be affirmed as Judge Aguirre did in his review at the circuit court level. There's still no evidence of any gross error of law or fact on the face of the award. Mr. Cawthill would ask you to go back and re-arbitrate this matter. That in order to understand what he is alleging is a gross error requires that you go back and re-evaluate the claim from the beginning. That's not what the scope of the review is in this matter. Apparent on its face means that apparent on the face of the award, not contained in the arbitrator's opinion. That's a Board of Education, City of Chicago case. If the appellate court has to undertake an independent analysis of the law and facts of the case, that necessarily means that the alleged error is not on the face of the award. And there is no basis to overturn the award. That's also the Board of Education of the City of Chicago. By repeatedly asking this court to do this, the appellate is acknowledging that the errors in its claims are not apparent on the face of the award. You have to go beyond the face of the award even to begin to see what is alleged as errors. I would ask that this court limit the review just to the statutory review and affirm the circuit court decision in this matter, affirming the arbitrator's decision. Thank you. I'm not sure I said that the first time. I apologize. Let me clear up a few things. First of all, there were two separate bargaining agreements in place. There was a police agreement and a laborers agreement. At the time, the laborers were 100. My client had both. Subsequently, the FOP then achieved the police contract. Two separate agreements, two separate negotiations. There was a proposal made on residency on a police contract by the city. Never a proposal made by the city on the laborers contract. Never, ever. Nothing in the record. So there's two separate contracts. All right? If a question was aimed at the grievance that says, would you like to move in as a police officer? But that's not indication that there's a mandatory notice given on either the police or the way. How can a question of would you want to move into the village? Apply to a different bargaining agreement that does not give. A residency requirement. The fact that the police has a residency, but not the laborers, would suggest that there is no residency. Would, by implication, suggest that there is no residency on the laborers contract. That's in the record. Secondly, Mr. Peoples cites the Beatty case. It's Beatty versus Docter, 5th District, 2007. That was an arbitration award of a doctor's case, commercial transaction case, not a laborers bargaining agreement case. And that case ruled that if the arbitrator was so mistaken as to law that there would be a different result if the court would act, then it could be reversed. That's exactly what I'm positing here, even though that's a commercial case. There's a gross error of law times two on this case. The Beatty case would be in our favor. As far as a limited review, Mr. Peoples, on page four of his reply brief, says he agrees with me. The proper standard review is de novo. Right there. The proper standard review. His brief. Not mine. I proposed it.  The proper standard review is de novo, not limited review. De novo. Now, where Mr. Peoples mentions, you know, how there's not a reentering subject to bargaining and the Belvedere cases don't apply, he argued that down below. That argument was addressed by Judge O'Brien, Sheila O'Brien, in the Calman and City case versus FOP. That was the very same argument mentioned in that case. It's 801 Northeast 2D 147. I cited it in my brief. At 150, what happened was the Belvedere line of cases developed in the 90s. In 1990, it was two-pronged. In 1997, I don't know exactly who, I think I know what interest group did, but I know for a fact in 1997, the state law was amended so that for police only, you didn't have to go through the two-pronged test. You just negotiated. It's flat-out negotiation. It's just direct negotiation. But for everybody else, you still followed the traditional Belvedere line. You still had to establish two prongs. After 1997, with the amendment for police, you didn't have to establish two prongs. You just negotiated. And you could not implement prior to negotiation. It was very clear. You didn't have to argue in court. You just couldn't do it, period. It was an unrelated practice to negotiate, to unilaterally implement, because it was a violation of the new amendment. Now, that very issue, and thereby implication, Mr. Peoples is saying that because the police was amended, then, therefore, nobody else has it anymore. It somehow robbed everybody else of the right for mandatory subject to bargaining. That very issue, that very argument was addressed by Sheila O'Brien in the Calumet City Court, and Justice O'Brien ruled on page 152. I'm giving you the Northeast citation. It's 801 Northeast 2D on 152. In the case of peace officers, the arbitration decision is limited to wages, hours, and conditions of employment, and includes residency requirements. And the court then further notes this whole sequence of events, that for everybody else, you still use the traditional belt of the airline. This very argument was rejected, the very argument that somehow the 97 amendments obviates mandatory subject to bargaining for everybody, but police was specifically addressed and rejected by the Calumet City case. Therefore, the traditional belt of the airline case is still applied. It's a mandatory subject to bargaining to agreement. Under the Labor Relations Act, state law, any ordinance independently enacted, which affects the condition of employment, shall be bargained for prior to implementation. That's in the Public Labor Relations Act, and therefore, we should prevail. Thank you. Thank you, Mr. Peoples.